UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORDELL POWELL,

                    Petitioner,

v.                                          CASE NO. 06-11325
                                            HONORABLE ARTHUR J. TARNOW
CARMEN D. PALMER,

                    Respondent.
_____/

## OPINION AND ORDER DENYING THE
## PETITION FOR WRIT OF HABEAS CORPUS

Pending before the Court is Cordell Powell's amended habeas corpus petition, which he

filed pursuant to 28 U.S.C. § 2254.  The habeas petition challenges Petitioner's convictions for

first-degree (felony) murder, armed robbery, and possession of a firearm during the commission

of a felony (felony firearm).  Respondent Carmen D. Palmer urges the Court through counsel to

deny the amended petition on grounds that Petitioner's claims are procedurally defaulted and

barred by the statute of limitations.   The Court deems the habeas petition timely, but agrees with

Respondent that Petitioner's first three claims are procedurally defaulted and that his fourth

claim lacks merit.  Consequently, the habeas petition is denied.  A procedural history and

discussion follow.

## I.  BACKGROUND

### A.  The Charges, Trial, Sentence, and Direct Appeal

Petitioner was charged with the fatal shooting of Isaiah Ellington during a robbery

at Ellington's barbershop in Detroit, Michigan.  As explained by the Michigan Court of Appeals,

> on November 15, 2001, defendant was in the barbershop waiting to be served
> along with other customers.  After defendant was seated in the barber chair, he

*Powell v. Palmer*, No. 06-11325

excused himself to the restroom.  He returned from the bathroom with a revolver
and announced a hold-up.  During the robbery, defendant shot and killed [Mr.
Ellington].  Two customers witnessed the robbery and were held-up as well, but
were unharmed.  Defendant took a cell phone belonging to one customer.  When
the customer later received the phone bill, it included a charge for a call to
defendant's girlfriend's father.

>    Defendant admitted in a statement to police that he went to the barbershop
>    to commit a hold-up and that he had a gun.  He stated, however, that he only shot
>    the gun once and did not hit anyone.  According to defendant, the barber and two
>    other men rushed him, and he shot the gun to get them off him.  The decedent also
>    had a gun.  Defendant stated that he obtained no money during the hold-up and
>    only took a cell phone, which he used to call his girlfriend's father.

*People v. Powell*, No. 244915 (Mich. Ct. App. May 18, 2004) (unpublished).  One of the

customers identified Petitioner in a photographic array, and both customers identified Petitioner

at trial as the gunman.

Victor Frost, the father of Petitioner's girlfriend, testified that Petitioner informed him

about the confrontation at the barbershop.  Petitioner told Frost that he fired a gun once into the

air and ran out of the shop after the barber drew a weapon and started shooting at him.

Petitioner did not testify or present any witnesses.  Defense counsel argued to the jury

that Petitioner did not intend to hurt anyone and that he lacked the necessary intent to be found

guilty of felony murder.  Counsel maintained that a robbery occurred, but not felony murder.

On August 1, 2002, a Wayne County Circuit Court jury found Petitioner guilty, as

charged, of first-degree murder, Mich. Comp. Laws § 750.316(1)(b), armed robbery, Mich.

Comp. Laws § 750.529, and felony firearm, Mich. Comp. Laws § 750.227b.  The trial court

sentenced Petitioner to two years in prison for the felony firearm conviction, followed by

concurrent terms of life imprisonment without the possibility of parole for the murder conviction

2

*Powell v. Palmer*, No. 06-11325

and 225 to 600 months (eighteen years, nine months to fifty years) for the armed robbery conviction.

In an appeal of right, Petitioner argued that (1) the trial court's answers to the deliberating jury's questions deprived him of a fair trial, (2) the prosecutor's closing argument was improper, and (3) the failure to electronically record his statement to the police deprived him of due process of law. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, *per curiam* opinion, *see People v. Powell*, No. 244915 (Mich. Ct. App. May 18, 2004), and on November 22, 2004, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Powell*, 471 Mich. 921 (2004) (table). On April 18, 2005, the United States Supreme Court denied Petitioner's application for a writ of certiorari. *See Powell v. Michigan*, 544 U.S. 983 (2005).

**B. The First Habeas Corpus Petition, the Stay, and State Collateral Review**

On March 30, 2006, Petitioner filed a *pro se* habeas corpus petition in this Court. He raised the same claims that he presented to the state courts on direct review of his convictions. After Respondent filed an answer to the petition, the Court appointed counsel for Petitioner, who moved to stay this case while he pursued state remedies for certain new claims about his trial and appellate attorneys. On October 3, 2008, the Court granted Petitioner's request for a stay and ordered him to file a motion for relief from judgment in state court within sixty days of the Court's order. The Court also stated that, if Petitioner were unsuccessful in state court, he could file an amended habeas corpus petition and a motion to re-open this case, provided that he did so

3

*Powell v. Palmer*, No. 06-11325

within sixty days of exhausting state remedies for his new claims.  The Court then closed this case for administrative purposes.

Petitioner alleges that he filed a timely motion for relief from judgment in state court on December 2, 2008.  The state trial court denied his motion pursuant to Michigan Court Rule 6.508(D), and the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D).  *See People v. Powell*, No. 291102 (Mich. Ct. App. July 1, 2009).  On January 29, 2010, the Michigan Supreme Court likewise denied leave to appeal under Rule 6.508(D).  *See People v. Powell*, 485 Mich. 1079 (2010) (table).

**C.  The Amended Habeas Petition and Answer**

On March 29, 2010, Petitioner filed an amended habeas corpus petition through counsel and a motion to re-open this case.  The Court granted Petitioner's motion to re-open his case, and Respondent filed an answer to the amended petition.

Respondent maintains that the amended petition is untimely because Petitioner did not comply with the Court's order to file a motion for relief from judgment in state court within sixty days of the order staying his federal case.  For the motion to be timely, it had to be filed in the state trial court on or before December 2, 2008, which was sixty days after this Court granted Petitioner's request for a stay of this case.  Petitioner claims that he filed his motion for relief from judgment on December 2, 2008, but the time stamp on the cover page of the motion is not legible, and the state court's docket indicates that the motion was filed on December 8, 2008.

Nevertheless, strict compliance with the sixty-day rule is not required.  *See Griffin v. Rogers*, 399 F.3d 626, 635-38 (6th Cir. 2005) (concluding in a case where the habeas petition

4

*Powell v. Palmer*, No. 06-11325

was not stayed pending exhaustion of state remedies that the petitioner was entitled to traditional

equitable tolling of the statute of limitations even though she waited nearly six and a half months

after the District Court's dismissal of her habeas petition to file a delayed appeal in state court).

Counsel for Petitioner, moreover, states that he hand-delivered Petitioner's motion for relief

from judgment to the state court on December 2, 2008, and that he has a copy of the motion with

the state court's time stamp on it as proof.    It is possible that the motion was docketed several

days after it was actually filed, and even if the motion were filed on December 8, 2008, it was

filed only six days after the deadline set by the Court in its order granting a stay.  The Court

therefore deems the amended habeas corpus petition timely.  The Court will proceed to address

Petitioner's claims, using the following standard of review.

## II.  STANDARD OF REVIEW

Section 2254(d) of Title 28, United States Code, imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law, as
>         determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in the
>         State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1).

*Powell v. Palmer*, No. 06-11325

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

## III. DISCUSSION

### A. Procedural Default

The amended habeas corpus petition list four grounds for relief: (1) trial counsel was ineffective for failing to object to a coercive jury instruction; (2) trial counsel was ineffective for failing to object to prosecutorial misconduct; (3) trial counsel was ineffective for failing to object to Petitioner's statement to the police not being recorded and suppressed for that reason; and (4) appellate counsel was ineffective for failing to raise a claim about trial counsel's ineffectiveness. Respondent argues that these claims are procedurally defaulted because Petitioner raised the claims for the first time in his motion for relief from judgment and subsequent appeal, instead of presenting them to the state courts on direct appeal.

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). The doctrine of procedural default prohibits a federal court from

6

*Powell v. Palmer*, No. 06-11325

reviewing the merits of a petitioner's claims, including constitutional claims, if the state court

declined to hear the claims because the prisoner failed to abide by a state procedural rule.

*Martinez v. Ryan*, __ U.S. __, __, 132 S. Ct. 1309, 1316 (2012).  Three elements must be

satisfied before a claim may be considered procedurally defaulted:  "(1) the petitioner failed to

comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts

actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is

an 'adequate and independent' state ground foreclosing review of a federal constitutional claim."

*Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003).

The state procedural rule applicable here is Michigan Court Rule 6.508(D), which reads

in relevant part:

> **(D) Entitlement to Relief.**  The defendant has the burden of establishing
> entitlement to the relief requested.  The court may not grant relief to the defendant
> if the motion
>
> . . . .
>
> > (3) alleges grounds for relief, other than jurisdictional
> > defects, which could have been raised on appeal from the
> > conviction and sentence . . . unless the defendant demonstrates
> >
> > > (a) good cause for failure to raise such
> > > grounds on appeal . . . , and
> > >
> > > (b) actual prejudice from the alleged
> > > irregularities that support the claim for relief. As
> > > used in this subrule, "actual prejudice" means that,
> > >
> > > > (I) in a conviction following a trial,
> > > > but for the alleged error, the
> > > > defendant would have had a
> > > > reasonably likely chance of acquittal;

7

*Powell v. Palmer*, No. 06-11325

> . . . .
>
> The court may waive the "good cause" requirement of subrule (D)(3)(a) if it
> concludes that there is a significant possibility that the defendant is innocent of
> the crime.

Mich. Ct. R. 6.508(D)(3).

Petitioner violated Rule 6.508(D)(3) by failing to raise his claims about trial counsel on direct appeal and by asserting the claims for the first time in his motion for relief from judgment and subsequent appeals.[1] Thus, the first element of procedural default is satisfied.

The second element of procedural default also is satisfied, because the last state court to issue a reasoned opinion on Petitioner's claims enforced Rule 6.508(D). The state appellate courts' brief orders citing Rule 6.508(D) were not "explained orders invoking a procedural bar." *Guilmette v. Howes*, 624 F.3d 286, 289 (6th Cir. 2010). Consequently, the Court must "look through" those orders to the trial court's reasoned opinion on Petitioner's motion for relief from judgment. *Id*. at 291. The trial court denied Petitioner's motion on the ground that Petitioner failed to demonstrate "good cause" and a "reasonably likely chance of acquittal" (actual prejudice) or a "significant possibility that the defendant is innocent of the crime[s]." This language comes from Rule 6.508(D)(3). Thus, the last state court to issue a reasoned opinion actually enforced Rule 6.508(D)(3). The subsequent unexplained orders of the Michigan Court of Appeals and the Michigan Supreme Court left the trial court's ruling in place.

---

[1] Petitioner's claim about appellate counsel is not procedurally defaulted because he could not be expected to raise a claim about appellate counsel on direct appeal while he was being represented by the attorney. His motion for relief from judgment was the first time he could raise that claim. *Whiting v. Burt*, 395 F.3d 602, 610 n.6 (6th Cir. 2005); *Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004); *McFarland v. Yukins*, 356 F.3d 688, 713 (6th Cir. 2004).

8

*Powell v. Palmer*, No. 06-11325

The third element of procedural default concerns the adequacy and independence of the state procedural rule in question. "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, __ U.S. __, __, 131 S. Ct. 1120, 1127 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, __, 130 S.Ct. 612, 618 (2009)). Rule 6.508(D) is firmly established and regularly followed, and the Federal Court of Appeals for the Sixth Circuit considers the rule "an independent and adequate state ground" for procedural-default purposes. *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir.), *cert. denied*, __ U.S. __, 133 S. Ct. 664 (2012).

To summarize, all three elements of procedural default are satisfied here. Petitioner violated a state procedural rule, the state trial court enforced the rule, and the rule was an adequate and independent state ground, requiring Petitioner to raise his claims during his direct appeal. Thus, Petitioner's claims about trial counsel are procedurally defaulted unless he can show "cause for [his] default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## B. "Cause" for the Procedural Default

Petitioner alleges that his appellate attorney was ineffective for failing to raise his claims about trial counsel on direct appeal. "Failure of appellate counsel to raise an issue on appeal can amount to constitutionally ineffective assistance," *Jalowiec v. Bradshaw*, 657 F.3d 293, 321 (6th Cir. 2011) (citing *McFarland v. Yukins*, 356 F.3d at 710), *cert. denied*, __ U.S. __, 133 S. Ct. 107 (2012), and "[i]neffective assistance of appellate counsel can constitute cause to excuse a

9

*Powell v. Palmer*, No. 06-11325

procedural default." *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (citing *Murray v. Carrier*, 477 U.S. 478, 492 (1986), and *Howard v. Bouchard*, 405 F.3d 459, 478 (6th Cir. 2005)), *cert. denied*, __ U.S. __, 131 S. Ct. 2117 (2011).  But to demonstrate that appellate counsel was ineffective, Petitioner must show (1) that his attorney was objectively unreasonable in failing to raise his nonfrivolous issues on appeal and (2) a reasonable probability that he would have prevailed on appeal were it not for his attorney's unprofessional errors.  *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687-91, 694 (1984)); *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010).

The Court looks to Petitioner's underlying claims about trial counsel to determine whether appellate counsel was ineffective for failing to raise those claims on appeal.  *Howard v. Bouchard*, 405 F.3d at 478-79.  A trial attorney is ineffective if his or her "performance was deficient" and "the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687.  The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id*. at 689.

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694 .  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, __ U.S. __, __, 131 S.

10

*Powell v. Palmer*, No. 06-11325

Ct. 770, 792 (2011) (quoting *Strickland*, 466 U.S. at 693). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (internal and end citations omitted).

### 1. Trial Counsel's Failure to Object to the Trial Court's Instructions

Petitioner alleges that the trial court's response to the jurors' questions during deliberations amounted to a coercive jury instruction and, therefore, his attorney should have objected to the court's response.[2] The trial court stated, without explanation, in its order denying Petitioner's motion for relief from judgment that Petitioner's claim failed.

#### a. Legal Framework

A defendant in a criminal jury trial is entitled to an uncoerced jury verdict. *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). To determine whether supplemental jury instructions had a coercive effect on the jury, the instructions must be viewed in context and in light of all the circumstances. *Id.* at 237 (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (*per curiam*)); *Valentine v. United States*, 488 F.3d 325, 336 (6th Cir. 2007) (citing *Gibson v. United States*, 271 F.3d 247, 258 (6th Cir. 2001)). Trial courts have a duty "to clear up uncertainties which the jury brings to the court's attention" and "to provide impartial and effective guidance on the law for the jury to follow in its deliberations." *United States v. Giacalone*, 588 F.2d 1158, 1166 (6th Cir. 1978). "[T]he propriety of a supplemental instruction must be measured 'by

---

[2] The defense attorney who represented Petitioner during the disputed supplemental jury deliberations was the trial attorney's son. He stood in for his father, who was the attorney of record, with Petitioner's permission. (Trial Tr. Aug. 1, 2002, at 54.)

*Powell v. Palmer*, No. 06-11325

whether it fairly responds to the jury's inquiry without creating . . . prejudice.'" *United States v. Nunez*, 889 F.2d 1564, 1568 (6th Cir. 1989) (quoting *Giacalone*, 558 F.2d at 1166).

### b. Application

Petitioner's amended habeas corpus petition does not quote or cite to any jury instructions to which trial counsel should have objected as coercive. Nevertheless, in his initial habeas petition and on appeal, Petitioner objected to the following remarks, which the trial court made in response to the deliberating jury's written notes to the court:

> [THE COURT:]  When I [g]ave you your instructions, one of the first things I told you was you are not detectives, you are not attorneys, and this is not television.
>
> You have heard the evidence; you have taken it in there.
>
> Now, I'll read these questions, and of course I cannot be a fact finder.  I can't answer questions.  I can't tell you how to make a decision, you have to do it yourselves.
>
> But these questions like:
>
> "What was the caliber of the bullet found in the chair?"
>
> "What was the caliber of fragment found near the chair?"
>
> "What was the caliber of the bullet found in the victim?"
>
> "Does a jacketed bullet mean from a .38?"
>
> "There were fingerprints found on the bathroom door.  Whose were they?"
>
> "Whose blood was found outside the door?"
>
> The attorneys didn't argue any of that to you.  But I will tell you this: This is what you're supposed to do.

12

*Powell v. Palmer*, No. 06-11325

You decide that on November 14th, 2001, if Mr. [Ellington] was alive. You're supposed to make that decision.

Then you decide on the 15th of November, was he dead.

And if he was dead on the 15th of November, did the defendant kill him.

If the defendant killed him, did he kill him in the perpetration of a robbery.

That's what you are to decide. All this other stuff, I can't answer those questions for you.

But, was the man alive; is he dead. Did the defendant kill him. And was he killed during a robbery.

You heard all the evidence.

The next question is:

This other gentleman, Mr. Miller, was he in the barbershop on that day. Was he assaulted. Was there property taken from him. And was it taken by the defendant. That's all. Okay?

You've got all the evidence. You heard the same case that I did. Again, forget about the movies and television. The evidence is what you have.

Just take what you've got. Decide whether or not that man was killed. Did he die naturally, did he commit suicide. Decide if he was killed. And was it during a robbery, and was he killed by the defendant.

That's all I'm asking you to do. Okay?

Can you handle it now? Thank you.

(Trial Tr. Aug. 1, 2002, at 54-56.) Petitioner contends that these remarks were coercive, because

the trial court scolded the jurors, belittled their questions, and made the sarcastic remark that

they had to decide whether the victim committed suicide or was killed.

13

*Powell v. Palmer*, No. 06-11325

The Court disagrees with Petitioner's contention that the trial court's remarks were coercive.  The remarks merely directed the jurors' attention to the critical issues in the case and encouraged the jurors not to become distracted by matters that had no bearing on the ultimate question of guilt or innocence.  Depending on the tone of voice used by the trial court, it is quite possible that the jurors were not offended by the court's remarks, because the trial court had previously informed them that they were not attorneys, prosecutors, or detectives, that they should not invent anything, and that this was not television.  The jurors may have viewed the supplemental remarks as helpful, for the remarks simplified and clarified the issues and provided guidance on the law.

The trial court did not pressure the jurors to make a hasty verdict, nor convey the impression that a quick verdict was more important than a thoughtful verdict.  Although  the jury reached a verdict just six minutes after the trial court gave the supplemental instructions quoted above, "'the jury's speed in reaching a verdict is irrelevant to whether an instruction was coercive.'"  *Valentine*, 488 F.3d at 336 (quoting *United States v. Ratliff*, 63 F. App'x 192, 196 (6th Cir. 2003)).  And the consistency of the jury's verdict is some indication that the jury was *not* coerced into rendering a verdict.  *See United States v. Paniagua-Ramos*, 135 F.3d 193, 199 (1st Cir. 1998) (stating that "an inconsistent verdict can be probative of whether a jury was confused or coerced into rendering a compromise verdict").

Furthermore, the trial court thoroughly instructed the jury on the elements of the crimes during in its initial instructions to the jury.  The initial instructions also informed the jurors of the option of finding Petitioner not guilty or guilty of the lesser-included offense of second-degree

14

murder on count one.  (Trial Tr. Aug. 1, 2002, at 38-46.)  The jurors were told that it was their

duty to decide and evaluate the facts on the basis of the admissible evidence.  (*Id*. at 31-32, 34.)

When viewed in context, the supplemental instructions did not create a coercive

atmosphere.  Therefore, trial counsel's failure to object to the trial court's supplemental

instructions did not amount to deficient performance.

Even if counsel's acquiescence in the supplemental jury instructions amounted to

deficient performance, the jurors' questions suggest that they may have been concerned about

the actual gun used to kill Mr. Ellington and who fired the fatal gunshot.  The evidence

established that both Mr. Ellington and Petitioner were armed.  Although Petitioner informed the

police that he did not fire directly at Mr. Ellington and that he did not know whether he shot

anyone, "felony murder can be used to prosecute 'unintended victim' murder cases without

resort to the legal fiction of 'transferred intent.'"  *Krantz v. Lindamood*, 594 F.3d 896, 900 (6th

Cir. 2010).  Thus, it did not matter who fired the fatal gunshot or whether Petitioner actually

intended to kill Mr. Ellington, and trial counsel's failure to object to the supplemental jury

instructions did not prejudice the defense.

### 2.  Trial Counsel's Failure to Object to the Prosecutor's Conduct

The second habeas claim alleges that trial counsel was ineffective for failing to object to

the prosecutor's misconduct.  According to Petitioner, the prosecutor improperly injected issues

broader than guilt or innocence into the proceedings and appealed to the jurors' sympathy.  The

trial court stated on review of this claim that the alleged errors were not significant enough to be

unduly prejudicial.

15

*Powell v. Palmer*, No. 06-11325

The  amended habeas petition does not quote any language to which trial counsel should have objected, but in his initial petition and in his state appellate briefs, Petitioner objected to the prosecutor's rebuttal argument that

it's our duty.  It's our responsibility.  And at this point we owe it to Mr. Ellington.
Guilty as charged.

(Trial Tr. Aug. 1, 2002, at 30).

### a.  Legal Framework

A prosecutor must "'refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law . . . .'"  *Darden v. Wainwright*, 477 U.S. 168, 191-92 (1986) (quoting ABA Standard for Criminal Justice 3-5.8(d) (2d ed. 1980)).  A prosecutor also may not incite the passions and prejudices of the jury by calling on the jury's emotions and fears, rather than the evidence, to decide the case. *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008).

### b.  Application

Objections to closing arguments "are matters to be approached cautiously," *United States v. Young*, 470 U.S. 1, 13 (1985), and the disputed remarks here were made at the conclusion of the rebuttal argument during which the prosecutor argued the law and the facts.  Moreover, nothing prevents a prosecutor from appealing to the jury's sense of justice, *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009) (citing *Coe v. Bell*, 161 F.3d 320, 351 (6th Cir. 1998)), and urging the jury to do justice for a victim is proper.  *United States v. Boyd*, 640 F.3d 657, 670 (6th Cir.), *cert. denied*, __ U.S. __, 132 S. Ct. 271 (2011).

16

*Powell v. Palmer*, No. 06-11325

Furthermore, the trial court informed the jurors that they were the triers of fact, that they should not be influenced by bias, pity, or prejudice, and that they should find the defendant guilty only if the prosecutor overcame the presumption of innocence beyond a reasonable doubt. (Trial Tr. Aug. 1, 2002, at 31-33.)  The trial court also explained that the attorney's arguments were not evidence and that, if any argument was contrary to, or not supported by, the evidence, the jurors should forget it, because the evidence came from the witness stand.  (*Id.* at 35.)  Jurors are presumed to follow their instructions, *Richardson v. Marsh*, 481 U.S. 200,  211 (1987); *Hill v. Mitchell*, 400 F.3d 308, 325 (6th Cir. 2005), and the generalized instructions in this case served, "if only moderately," to reduce any prejudice caused by the prosecutor's remarks. *United States v. Gracia*, 522 F.3d 597, 604 (5th Cir. 2008).

Additionally, the evidence against Petitioner was strong.  To prove that Petitioner committed felony murder, the prosecutor had to establish

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute, including armed robbery].

*People v. Carines*, 460 Mich. 750, 759 (1999) (quoting *People v. Turner*, 213 Mich. App. 558, 566 (1995)) (alteration in original).

Petitioner admitted to the police that he went to the barbershop to take money and  that he fired a gun inside the barbershop.  Although he denied firing the gun at a particular person, the eyewitnesses identified Petitioner at trial as the robber and gunman.  The medical examiner testified that Mr. Ellington died from a single gunshot wound to the head and that the manner of

*Powell v. Palmer*, No. 06-11325

death was homicide.  There was more than enough evidence from which the jury could have concluded that Petitioner killed Mr. Ellington during an armed robbery and that Petitioner acted with the intent to kill, the intent to do great bodily harm, or the intent to create a very high risk of death or great bodily harm, knowing that death or great bodily harm was the probable result.

The Court concludes for all the foregoing reasons that the prosecutor's remarks were not improper, and even if they were, the remarks did not render Petitioner's trial fundamentally unfair.  Consequently, trial counsel's failure to object to the remarks was not deficient performance, and the alleged deficiency did not prejudice the defense.

### 3.  Trial Counsel's Failure to Object to the Lack of a Recorded Statement

Petitioner's final claim about trial counsel concerns Petitioner's statement to the police. Petitioner contends that trial counsel should have attempted to suppress the statement on the basis that the statement was not electronically recorded.

The trial court rejected Petitioner's claim because, under Michigan law, the mere failure to electronically record a police interrogation, when feasible, does not violate a defendant's right to due process.  *See People v. Fike*, 228 Mich. App. 178, 184 (1998). There also is no federal constitutional requirement that a suspect's statement to the police be electronically recorded.  *United States v. Tykarsky*, 446 F.3d 458, 477 (3d Cir. 2006); *United States v. Williams*, 429 F.3d 767, 772 (8th Cir. 2005) (citing *United States v. Montgomery*, 390 F.3d 1013, 1017 (7th Cir. 2004)); *United States v. Boston*, 249 F. App'x 807, 810 (11th Cir. 2007).  Consequently, trial counsel's lack of an objection to the failure to record Petitioner's statement did not amount to ineffective assistance.

18

*Powell v. Palmer*, No. 06-11325

### 4.  Summary

For the reasons given above, the Court concludes that trial counsel was not constitutionally ineffective.  Because "trial counsel performed adequately, [the Court's] inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).  Thus, Petitioner has failed to prove an independent claim of ineffective assistance of appellate counsel, and he has not established "cause" for his failure to raise his claims about trial counsel on direct appeal. *See Hoffner v. Bradshaw*, 622 F.3d at 499 (stating that appellate counsel's failure to raise "guilt-phase ineffective-assistance claims does not establish cause to excuse the default . . . because the underlying claims are meritless").

### C.  "Prejudice;" Miscarriage of Justice

The Court need not determine whether Petitioner was prejudiced by the alleged constitutional errors, because he has not shown "cause" for his procedural default.  *Tolliver v. Sheets*, 594 F.3d 900,  930 & 930 n.13 (6th Cir. 2010).  The remaining issue is whether the Court's failure to review the substantive merits of Petitioner's defaulted claims will result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. at 750.

The miscarriage-of-justice exception "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 506 U.S. 390, 404 (1993).  Thus, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the

19

*Powell v. Palmer*, No. 06-11325

procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To demonstrate actual innocence, Petitioner must show that, in light of some new evidence, no reasonable juror "would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Petitioner has not produced any new evidence of actual innocence. Therefore, a miscarriage of justice will not result from the Court's failure to address the substantive merits of his claims about trial counsel.

## IV.  CONCLUSION

Petitioner's claims about trial counsel are procedurally defaulted, and his claim about appellate counsel lacks merit because the underlying claims about trial counsel fail. Accordingly, the amended petition for writ of habeas corpus [Doc. #31, filed Mar. 29, 2010] is **DENIED**.

## V.  CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . .  When the district court denies a

*Powell v. Palmer*, No. 06-11325

habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not debate whether the Court's procedural ruling on Petitioner's defaulted claims is correct or whether the petition states a valid claim of ineffective assistance of trial counsel.  Nor would reasonable jurists find the Court's assessment of Petitioner's claims about appellate counsel debatable or wrong.  The Court therefore declines to grant a certificate of appealability.  Petitioner nevertheless may proceed *in forma pauperis* on appeal if he chooses to appeal this decision, because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: February 20, 2013

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on February 20, 2013, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant